UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18CR749 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| ELLIET LANIER, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon Defendant Elliet Lanier's Motion to Suppress evidence seized over the course of a narcotics investigation. (Doc. 40). After an evidentiary hearing, the Court **DENIED** Defendant's Motion. This Opinion sets forth the Court's rationale.

**I. BACKGROUND FACTS**

The investigation that led to Defendant's Indictment started in Houston, Texas. There, postal inspectors investigated a Houston-area narcotics supplier, who sold his or her wares over the dark web and utilized the Postal System to transport the narcotics. Over the course of their investigation, Houston investigators uncovered specific packages containing narcotics, including one sent from a fictitious candy store in Houston to Maryland in June of 2018.

On November 15, 2018, a Houston official contacted Cleveland Postal Inspector Marc Kudley about a suspicious package mailed on November 12, 2018 destined for Cleveland. The Houston official provided Kudley with the background of the investigation, as well as the

suspicious-package's tracking number, the sender (Donald Candy Shop) and addressee (Steve Chase) (the "Target Parcel").

The next day, on Friday November 16, 2018, Kudley interdicted the Target Parcel. Upon his own investigation, Kudley determined that the names of both the sender and the addressee were illegitimate and not associated with the listed addresses. He also noticed other suspicious indications that the Target Parcel contained drugs based on his near ten-year experience as a postal inspector. Kudley then placed the Target Parcel in a lineup with other packages not containing narcotics and allowed a detection canine to examine the lineup. The canine gave a positive alert at the Target Parcel, thereby indicating that the Target Parcel contained narcotics. Based on this information, Kudley sought a warrant to search the Target Parcel, which he received on November 16, 2018.

That same day, Kudley searched the Target Parcel. When doing so, he uncovered approximately 100 blue round pills marked "A-215" concealed in an oatmeal packet. The blue pills had the same markings as those previously associated with the Houston supplier and the Maryland package, which inspectors confirmed to be carfentanil.

On November 19, 2018, Kudley submitted the blue pills to the Cuyahoga County Regional Forensic Laboratory. That same day, the Lab confirmed that the blue pills — disguised as oxycodone — contained carfentanil, a Schedule II narcotic.

Meanwhile, Kudley continued his investigation. He reviewed postal records for the address at issue, 730 East 101st Street, Cleveland, Ohio 44108 (the "Target Location"). His review uncovered three similar packages sent from the Houston area to the Target Location. All three were addressed to the same recipient, Steve Chase. Two of the previous mailings also

listed fictitious candy shops as the sender. This information led Kudley to believe that the prior packages also contained similar narcotics as the Target Parcel.

Upon receiving the results from the Lab, postal investigators, along with the City of Cleveland police counterparts, conducted a controlled delivery of the Target Parcel. Before delivering the package, investigators removed the carfentanil and equipped the Target Parcel with a tracking device and a device that would notify police if the package were opened. An undercover agent disguised as a letter carrier then delivered the Target Parcel to the Target Location around 12:30PM on November 19, 2018.

Roughly twenty minutes after delivery, a male later identified as Courtney Johnson retrieved the Target Parcel from the common front porch. Johnson had exited and returned to a different unit than the one identified on the Target Parcel. There was no evidence that the Target Parcel was ever opened while in Johnson's possession.

Roughly two hours later, a black minivan with Arizona license plate approached the Target Location and parked outside. Minutes later, Johnson exited his residence with the Target Parcel, approached the minivan and handed the driver the Target Parcel. Afterwards, Johnson entered the passenger side of the van and remained inside for a brief period. During this time, police determined that the minivan was registered to Defendant and that Defendant was the driver. Eventually Johnson exited the van and returned to his residence without the Target Parcel. At no time had the Target Parcel been opened.

Upon Johnson's exit, Defendant left the area with the Target Parcel. Investigators followed Defendant, surveilling him and tracking the Target Parcel. For over six hours, Defendant drove around the City of Cleveland. He made various stops along the way, but

primarily at commercial businesses and restaurants. Again, at no point during Defendant's journey did the Target Parcel ever alert authorities that it had been opened.

Hours later, Defendant returned to a residence around 9:40PM, pulling "deep" into the driveway and parking his van next to the residence's side entrance. To the left of the driveway was a vacant lot. Not wanting Defendant to enter the residence with the Target Parcel, police immediately pulled into the driveway behind Defendant, leaving a few car lengths between their cruiser and Defendant's van. Upon police command, Defendant exited the vehicle, approached the police and was restrained without incident. During this time, Defendant volunteered that he had a firearm on his person. He did not, however, have the Target Parcel.

Believing that evidence of narcotics trafficking would be in the minivan, authorities searched the vehicle. They did not have a warrant. During the search, investigators found the Target Parcel, as well as a black notebook located next to the package. Upon review, the notebook contained information about cryptocurrencies — various usernames, passwords and accounts.

During the commotion outside the residence, officers contacted Defendant's sister, who owned and lived at the residence. She informed officers that Defendant rented two rooms at the residence, which conflicted with the information Defendant provided police. Investigators also learned that the residence had an AT&T U-Verse internet account, the same type of account that tracked the Target Parcel's delivery from Houston to Cleveland.

Cleveland police detained and arrested Defendant that night. At the same time, Cleveland Police Detective Dlugolinski sought a warrant to search the residence, which a Cuyahoga County Judge granted that same evening. With warrant in hand, officers searched the residence and uncovered evidence of narcotics trafficking.

Based on this investigation, a federal Grand Jury indicted Defendant with four counts relating to narcotics trafficking. On July 30, 2021, Defendant filed a Motion to Suppress the evidence obtained during the investigation. (Doc. 40). The Government opposed. (Doc. 42). Finding a hearing necessary, the Court ordered an evidentiary hearing on the matter. (Doc. 44). That hearing was held on November 12, 2021. The Court heard testimony from Inspector Kudley and argument from both Defendant and the Government. Following the hearing, the Court denied Defendant's Motion with this Opinion to follow.

## II. LAW & ANALYSIS

**A.     Standard of Review**

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is said to exist when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citations omitted).

In *Illinois v. Gates*, the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, ***given all the circumstances set forth in the affidavit*** before him [or her],…there is a fair probability that contraband or evidence of a crime will be found in a particular

> place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

462 U.S. 213, 238-39 (1983) (citations omitted) (emphasis added); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

A probable cause finding "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. However, reviewing courts must ensure that the issuing magistrate or judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239).

A reviewing court assesses probable cause by focusing only on the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitley v. Warden*, 401 U.S. 560, 564-65 (1971)); *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973) ("In determining that sufficiency [of the affidavit] we are concerned only with statements of fact contained in the affidavit").

Defendant's Motion presents a challenge to various aspects of the investigation, namely: 1) the delay of the Target Parcel; 2) his detainment and arrest; 3) the search of the automobile; and 4) the search of the residence. The Court finds that each challenge lacks merit.

B.     **Delay of the Parcel**

Beginning with the start of the investigation, Defendant challenges investigators' delay in delivering the package.[1] The Government claims Defendant cannot make this challenge because he lacks standing. While Defendant claimed a possessory or ownership interest in the Target Parcel at the suppression hearing, the Court agrees with the Government that Defendant lacks the societal interest necessary to challenge the detainment of the parcel.

To challenge the detainment of parcels, a defendant must demonstrate (1) that "he manifested a subjective expectation of privacy in the object of the challenged search; and (2) that society is prepared to recognize that expectation as legitimate." *United States v. Ligon*, 861 Fed. App'x 612, 619 (6th Cir. June 17, 2021) (citations omitted). Courts have consistently held that a defendant whose name is neither listed as the sender nor the recipient does not have a subjective expectation of privacy in the package and cannot challenge the parcel's detainment. *Id.* at 620; *United States v. Elgin*, 57 Fed. App'x 659, 661 (6th Cir. Jan. 31, 2003); *United States v. Ferguson*, 2021 WL 4848046, *3 (S.D. Ohio Oct. 18, 2021).

Like defendants in *Ligon*, *Elgin* and *Ferguson*, Defendant here neither sent nor received the package. He was not listed as the recipient of the package. He furthermore denied knowledge of the package and its contents. While now he asserts a possessory interest in the Target Parcel, Defendant did not demonstrate an expectation of privacy in the Target Parcel at the time of his arrest. Furthermore, Defendant has not demonstrated that society would recognize his claimed possessory interest as legitimate.

---

[1] In his briefing and argument, Defendant did not contest either the initial detainment of the parcel or the subsequent search of the parcel. Rightfully so, as the Court's review of the affidavit for search warrant of the Target Parcel gave the Magistrate Judge a substantial basis for concluding that probable cause existed to search the package. The Court does note however that Defendant requested a continuance of the evidentiary hearing in order to call the Houston postal inspector to testify. The Court denied Defendant's request.

Even if Defendant could challenge the delay of delivering the Target Parcel, his argument fails. While 'theoretically' the "detention of mail could at some point become an unreasonable seizure of 'papers' or 'effects' within the meaning of the Fourth Amendment," *United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970), the Target Parcel's detention here did not rise to that level. Defendant measures the interference from the time the package was placed in the mail, not when the government agents intercepted it. Starting from that period, the agents' behavior was more than reasonable. In the span of one day, they retrieved the parcel, conducted further investigation, sought a search warrant, obtained a search warrant and searched the Target Parcel. Investigators then confirmed the substance of the blue pills and still delivered the Target Parcel before 1:00PM the next business day. Thus, any delay in the delivery of the Target Parcel was reasonable and Defendant's challenge fails on its merits.

C.  **Defendant's Detainment and Arrest**

Defendant next argues that police detained him "far more than what would constitute a 'brief investigative stop.'" (Doc. 40, PageID: 179). As such, police illegally arrested and searched him which no exception to the warrant requirement applies. The Government disagrees, arguing that investigators had a reasonable, articulable suspicion that Defendant was involved in criminal activity. Moreover, the government claims that it is not clear what evidence the Defendant seeks to suppress with this challenge.

The Court agrees with the Government that it is unclear what evidence Defendant is seeking to suppress by challenging his detainment and arrest. The only evidence mentioned that came from Defendant's detainment was the firearm found on his person.[2] But the authorities had reasonable suspicion to approach Defendant and thus the seizure of the firearm was lawful.

---

[2] In a separate challenge, Defendant outlines the "Legal Standards of Suppression regarding 924(c)." (*See* Doc. 40, PageID: 181-82). In this section, Defendant attacks the merits of Count 2 in the Indictment, Carrying a Firearm

Reasonable suspicion is a "particularized and objective basis for suspecting a person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). Here, investigators had a reasonable suspicion that Defendant had been engaged in narcotics trafficking. At the time Defendant possessed the Target Parcel, investigators had confirmed that the package contained carfentanil disguised as oxycodone. The package itself had numerous indicia of narcotics trafficking. Defendant removed the Target Parcel from the Target Location, utilizing an intermediary to initially secure the package at its original destination. For over six hours then, Defendant drove around with the Target Parcel in his possession. Based on all this information, authorities had both a particularized and objective basis for stopping and approaching Defendant. And upon that approach, Defendant volunteered the information that he possessed a firearm. Thus, investigators approach to Defendant and Defendant's immediate disclosure of the firearm all confirm that police appropriately seized the weapon.

Officers also had probable cause to arrest Defendant. "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Ouza v. City of Dearborn Hts., Mich.*, 969 F.3d 265, 279 (6th Cir. 2020) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Generally, probable cause exists when the police have 'reasonably trustworthy information…sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Id.* (citation omitted). Thus, "[t]he test for an arrest asks whether there is 'a reasonable ground for belief of guilt' specific to the suspect." *United States v. Baker*, 976 F.3d 636, 645 (6th Cir. 2020).

---

During and in Relation to a Drug Trafficking Crime, a violation of 18 U.S.C. § 924(c)(1)(A)(i). This challenge is inappropriate at this suppression stage and thus the Court declines to consider the issue.

In addition to the information that gave investigators reasonable suspicion outlined above, police uncovered three additional pieces of information to confirm their suspicions about Defendant. First, investigators uncovered a notebook in Defendant's van that contained various usernames and passwords for cryptocurrency accounts. This piece of information was relevant to the investigation because the Houston supplier sold his narcotics over the dark web where cryptocurrency is regularly used. Second, the residence where Defendant lived maintained an AT&T U-Verse Account, which is relevant because an AT&T IP address tracked the Target Parcel on its journey from Houston to Cleveland. Finally, Defendant lied about the rooms he rented at the residence, thus adding to authorities' suspicions of Defendant. These facts, coupled with the facts identified above, provided police with probable cause to believe Defendant committed a criminal offense. Thus, Defendant's arrest was proper.

**D.     Search of the Automobile**

In a perfunctory manner, Defendant challenges the search of his minivan because police entered the vehicle without a warrant and without his consent. (Doc. 40, PageID: 180). The Government concedes that investigators searched Defendant's van without a warrant.

As a general rule, "searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). It is the government's burden to demonstrate an exception to the warrant requirement. *Taylor v. City of Saginaw*, 922 F.3d 328, 334 (6th Cir. 2019) (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951)).

Here, the Government claims that the automobile exception to the warrant requirement applies to the search of Defendant's van.³  "Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'"  *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *California v. Carney*, 471 U.S. 386, 391 (1985)).  Two main justifications support this exception: 1) the "ready mobility" of vehicles; and 2) "the pervasive regulation of vehicles capable of traveling on the public highways."  *Collins v. Virginia*, 138 S. Ct. 1663, 1669-70 (2019).  "When these justifications for the automobile exception 'come into play,' officers may search an automobile without having obtained a warrant so long as they have probable cause to do so."  *Id.* at 1670.

Defendant does not seriously debate the applicability of the automobile exception.  Accordingly, the Court finds that authorities properly searched Defendant's van under the automobile exception to the warrant requirement.  The van was 'readily mobile' as evidenced by Defendant's previous six-hour drive throughout the Cleveland area.  Moreover, while investigators pulled behind Defendant in the driveway, there was still 'car-lengths' of space between the vehicles.  The lot next to Defendant was vacant and did not provide any barriers to restrict the minivan to the driveway.  Thus, even though Defendant's minivan was not mobile at the time, this fact does not negate the applicability of the automobile exception.  *See Smith*, 510 F.3d at 650.

Most importantly, investigators had probable cause to search the minivan for the Target Parcel.  As the Government correctly highlighted in closing argument, the actual packaging of

---

³ The Government also contends that the search was permissible under the search-incident-to-arrest exception to the warrant requirement.  Given the Court's holding that the automobile exception applies, there is no need to analyze the Government's secondary argument.

the Target Parcel is evidence of a crime, namely the trafficking of narcotics via the dark web and the U.S. Postal System. Using the tracking technology, investigators knew that the minivan contained this evidence. Thus, investigators could properly enter the minivan to locate the Target Parcel. And finally, investigators could properly seize the notebook that was next to the Target Parcel, as its criminality was readily apparent to Inspector Kudley given the connection between cryptocurrency and the dark web.

Accordingly, Defendant's challenge to the search of his minivan is without merit.

**E.     Search of Residence**

Finally, Defendant challenges the search of his residence, saying that it occurred before police obtained a warrant. He also raises various technical challenges to the warrant. The Government claims Defendant waived many of the challenges here because he did not fully develop the claims. Even if he had, each challenge is without merit.

The Court agrees with the Government. Generally, a defendant bears the burden of proof "to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). Here, Defendant has not done that with the unsubstantiated claim that investigators entered his residence without a warrant. The Court directly brought this claim up during the hearing and Defendant did not adequately demonstrate the facts to support the claim. Therefore, Defendant's claim that officers searched his residence without a warrant is baseless.

Along those lines, a challenge to the search of the residence is also unfounded. As mentioned, investigators secured a search warrant prior to searching the residence. The lone challenge that the Court could conjure up is one of nexus, especially when the Target Parcel listed a different address than the residence that police searched. A finding of probable cause

requires a sufficient "nexus between the place searched and the evidence sought." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). "The affidavit must suggest 'that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of crime.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Here, the affidavit for search warrant created a sufficient nexus based on the following evidence: i) that Defendant removed the Target Parcel from its original destination and drove around with it for some time; ii) that Defendant ended up at a residence that he admitted he resided at; iii) that Defendant admitted he had a firearm inside the residence; iv) that Defendant rented two rooms in the residence, specifically the upstairs bedroom and basement, but only told police about the basement; and v) that the residence had an AT&T U-Verse Account and that an AT&T IP address tracked the Target Parcel from Houston to Cleveland.

Based on the totality of the circumstances alleged in the affidavit, the Court finds that the issuing judge had a substantial basis for concluding that probable cause existed to search the residence.

Finally, Defendant challenges two technical aspects of the Search Warrant: i) the lack of authorization for a nighttime search; and ii) the failure of police to return the Search Warrant in violation of Ohio Rule 41 and Revised Code Section 2933.24(A). (Doc. 40, PageID: 183). These challenges fail. The fact that the Search Warrant did not specifically authorize a nighttime search is not an automatic violation of Defendant's Fourth Amendment rights. *See United States v. McCullough*, 2021 WL 781454, *2 (N.D. Ohio Mar. 1, 2021) (an Ohio search warrant that does not unequivocally authorize a nighttime search does not automatically violate Ohio law or a

defendant's Fourth Amendment rights). Moreover, any technical violation in failing to return a search warrant does not mean suppression is mandatory absent some additional finding of prejudice. *See United States v. Dudek*, 530 F.2d 684, 691 (6th Cir. 1976) (the failure to make a prompt return and to verify the inventory [of a search has] no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures); *United States v. Kovacs*, 2021 WL 3562920 (S.D. Ohio Aug. 11, 2021) (citing *Dudek* in refusing to invalidate a search warrant on the grounds that officers did not return a warrant in compliance with Ohio law); *United States v. Perez*, 405 F. Supp. 2d 852, 854-55 (N.D. Ohio 2005) (finding no basis to suppress a search because of a violation of a state rule of procedure). Accordingly, Defendant's technical challenges to the Search Warrant are without merit.

### III. CONCLUSION

While Defendant attacks various searches and seizures throughout the investigation, each challenge fails. Accordingly, the Court **DENIES** Defendant's Motion to Suppress (Doc. 40).

**IT IS SO ORDERED.**

                        s/ Christopher A. Boyko
                        **CHRISTOPHER A. BOYKO**
                        **Senior United States District Judge**

**Dated: November 17, 2021**